UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GRANT JONES REALTY, LLC, <br><br> Plaintiff, <br><br> v. <br><br> MW CELL REIT I LLC and CROWN CASTLE USA INC. and XYZ CORP. (1-10) and JOHN DOES (1-10), <br><br> Defendants. | Civ. No. 2:24-cv-00701-WJM-JSA <br><br> OPINION |

## WILLIAM J. MARTINI, U.S.D.C.:

This matter comes before the Court on (1) the motion of Defendant MW Cell Reit I LLC ("MW" or "Defendant") to dismiss the complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), ECF No. 5, and (2) Plaintiff Grant Jones Realty, LLC's cross motion for leave to amend the complaint. ECF No. 10. The Court decides the matters without oral argument. Fed. R. Civ. P. 78(b). After careful consideration of the parties' submissions, and for the reasons set forth below, Defendant's motion to dismiss is **GRANTED** and Plaintiff's motion for leave to amend is **GRANTED**.

### I.  BACKGROUND[1]

#### A.  Facts

Plaintiff Grant Jones Realty, LLC ("Plaintiff") is a limited liability company that owns a building in Lyndhurst, New Jersey ("Building") with a rooftop cell tower. Compl. ¶¶ 1-4, ECF No. 1-1 Ex. A. The matter arises from a set of agreements[2] involving the cell tower that were executed approximately two decades ago by both parties' predecessors in interest. *Id.* at ¶¶ 5-8.

---

[1] The complaint is unpaged and paragraphs are continually renumbered. Since most facts are in the section on Count One, references to the complaint pertain to paragraphs in Count One unless otherwise noted.

[2] The agreements—a lease, a loan, and an assignment of leases and rents—are not attached to the complaint, but are referenced in it and are central to Plaintiff's claims. *See* Compl. ¶¶ 5-8. The parties do not dispute the authenticity of the documents, which are attached to Defendant's motion to dismiss. ECF No. 5. The Court will thus consider them in deciding the pending motions. *See Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

The Building at the center of this action was owned by various entities—including Spansion Group, LLC ("Spansion") and Coubar Enterprises, LLC ("Coubar")—before being conveyed to Plaintiff. *Id.* at ¶ 2. On February 6, 2004, Spansion entered into an agreement with a wireless service provider (now "T-Mobile") allowing T-Mobile to lease use of the Building rooftop to operate the cell tower ("Cell Tower Lease"). *Id.* at ¶ 6; *see* Cell Tower Lease, ECF No. 5-2 Ex. D. Sometime thereafter, Spansion sold the Building to Coubar. Compl. ¶ 2. In 2007, Coubar, Plaintiff's predecessor in interest, borrowed $200,000 from Wireless Capital Partners, LLC ("Wireless"), Defendant's predecessor in interest. *Id.* at ¶ 5. On September 27, 2007, Coubar and Wireless executed a loan agreement ("Loan") and assignment of leases and rents ("Assignment")[3] under which Wireless (1) loaned Coubar the $200,000 at a base interest of eight percent over a 35-year amortization period and in return (2) obtained the unconditional right to receive monthly rental payments directly from T-Mobile until October 1, 2042. *Id.* at ¶¶ 5, 8, 12; Assignment at 1 §§ B1-4, ECF No. 5-2 Ex. B; Loan at 1, ECF No. 5-2 Ex. C.

The agreements specify that the principal and interest on the loan is to be paid solely from T-Mobile's rental payments. Compl. ¶ 6; *see generally* Loan & Assignment. Specifically, the Assignment gives Wireless the "right to collect all Rent" from T-Mobile, including monthly base rent, as well as income, charges, fees, and other revenue payable by T-Mobile under the Cell Tower Lease. Assignment at 1 § B. Attached to the Loan is an amortization table calculating the principal and interest for each monthly pay period until October 1, 2042. Loan at Ex. B. The Loan provides that, if the monthly rental payment Wireless receives from T-Mobile exceeds Coubar's monthly repayment obligation under the Loan, Wireless may nonetheless retain the excess funds. *See* Loan at § 2. The loan cannot be prepaid in installments; to pay off the loan before its maturity date, Coubar must make a single, lump sum payment subject to fees. *Id.* at § 3.

Sometime after the September 2007 execution of the Loan and Assignment, Wireless assigned its interests under the agreements to Defendant MW, giving MW, the successor lender under the Loan and Assignment, the right to collect all rental payments directly from T-Mobile. Compl. ¶ 9. Coubar later sold the Building to Plaintiff, which in turn became the successor borrower under the Loan and Assignment. *Id.* at ¶¶ 5, 7. At the heart of the dispute is MW's retention of all rental payments from T-Mobile, including rent exceeding Plaintiff's repayment obligations under the Loan's amortization table. *See* Joint Letter on Subject Matter Jurisdiction at 3, ECF No. 15. Plaintiff alleges that (1) "[b]ased on the payment schedule of the [Cell Tower Lease], the amount owed under the $200,000 loan should have already been paid off in full, or should be paid off in full shortly" and (2) once the Loan has been paid off, MW should no longer be entitled to rental payments. Compl. ¶¶ 10, 13. Plaintiff acknowledges that the Loan states that MW will continue to

---

[3] The Loan provides that the Loan and Assignment shall be governed by and construed in accordance with California law to the extent permitted by New Jersey law. Loan at § 21. Neither party has briefed whether California or New Jersey law should apply; however, a choice-of-law analysis is unnecessary because Plaintiff's claims fail under both California law and New Jersey law. Should any conflict-of-laws issue arise, the parties may present arguments regarding governing law.

receive rental payments from T-Mobile until 2042 but contends that any rental payments made from T-Mobile to MW (instead of Plaintiff) after the loan has been repaid in full would be "inequitable" since Plaintiff would not be receiving any benefit from the cell tower. *Id.* at ¶ 12. The complaint alleges Plaintiff has been damaged and seeks declaratory, equitable, and injunctive relief in addition to compensatory damages, treble damages, punitive damages, and attorney's fees. *See generally id.*

### B. Procedural History

Plaintiff filed this action in the Superior Court of New Jersey in Bergen County on December 18, 2023, asserting a panoply of eight claims against Defendant: an accounting (Count One); a declaratory judgment (Count Two); an injunction (Count Three); conversion (Count Four); unjust enrichment (Count Five); equitable fraud (Count Six); reformation of the Loan (Count Seven); and attorney's fees (Count Eight).[4] *Id.* On February 6, 2024, MW timely removed the action asserting diversity jurisdiction, ECF No. 1, and subsequently moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 5. This Court has subject matter jurisdiction over the action pursuant to U.S.C. § 1332 based on the diverse citizenship of the parties and an amount in controversy exceeding $75,000.[5] *See* ECF No. 14. On April 1, 2024, Plaintiff filed a cross motion for leave to amend the complaint if any counts are dismissed. ECF No. 10.

## II. DISCUSSION

### A. Defendant's Motion to Dismiss

#### 1. Rule 12(b)(6) Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss, "all allegations in the complaint must be accepted as true, and the plaintiff must

---

[4] Plaintiff has withdrawn its claims for an injunction (Count Three), reformation of the Loan (Count Seven), and attorney's fees (Count Eight). *See* Pl. Opp. Br. at 17, 22. The Court will not address these causes of action. Plaintiff seeks permission to "request legal fees," *id.* at 22, and MW seeks attorney's fees pursuant to the Loan. Def. Mot. at 39 (citing Loan § 22). It is premature to address the award of attorney's fees, though the parties may file a motion for attorney's fees at a future date.

[5] Plaintiff is an LLC comprised of four members who are residents of and domiciled in New Jersey, ECF No. 14, and is thus a citizen of New Jersey. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (citizenship of an LLC is determined by the citizenship of each of its members). MW is a Delaware LLC with a registered business address in Houston, Texas. Def. Notice of Removal ¶ 9, ECF No. 1. MW's ultimate and only non-LLC member is Crown Castle USA Inc., a corporation with a principal place of business in Pennsylvania. *Id.* at ¶¶ 10-12. MW is a citizen of Pennsylvania. *Id.* at ¶ 11.

3

be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court need not accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Though a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

In ruling on a 12(b)(6) motion, the Court is ordinarily limited to the facts as alleged in the complaint, attached exhibits, and matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1996 (3d Cir. 1993). The Court may, however, look outside the pleadings and consider "document[s] integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Asbestos Prod. Liability Litig. (No. VI)*, 822 F.3d 125, 134 n.7 (3d Cir. 2016) (citation and quotation marks omitted).

## 2. Request for Accounting (Count One)

In Count One, Plaintiff requests that the Court order an accounting from MW to determine (1) all payments received by MW regarding the Loan, (2) the total amount paid under the Loan, (3) and the current amount due under the Loan ("if anything"). Compl. ¶ 15. Plaintiff alleges that, before initiating this lawsuit, it made unsuccessful requests to Defendant for an accounting of these items. *Id.* at ¶ 11. MW argues Count One should be dismissed because Plaintiff has not alleged the required elements to obtain an accounting under either California or New Jersey law. Def. Mot. at 22. The Court agrees with Defendant that Plaintiff has failed to state a claim for an accounting.

The "necessary prerequisite" for an accounting is "the absence of an adequate remedy at law." *Dairy Queen v. Wood*, 369 U.S. 469, 478, 82 S. Ct. 894, 900, 8 L. Ed. 2d 44 (1962). Further, under New Jersey law, an accounting may only be appropriate when three elements are present: (1) the existence of a fiduciary or trust relationship; (2) the complicated nature of the account at issue; and (3) the need of discovery. *Wiatt v. Winston & Strawn LLP*, 838 F. Supp. 2d 296, 323 (D.N.J. 2012) (quoting *Borough of Kenilworth v. Graceland Mem'l Park Ass'n*, 124 N.J. Eq. 35, 37 199 A. 716 (Ch. 1938)). While California permits an action for an accounting in the absence of a fiduciary relationship, the accounts at issue must be "so complicated that an ordinary legal action demanding a fixed sum is impracticable." *Meixner v. Wells Fargo Bank, N.A.*, 101 F. Supp. 3d 938, 961 (E.D. Cal. 2015) (applying California law).

Plaintiff provides no support for its accounting claim. First, the complaint fails to allege the absence of an adequate remedy at law. Even assuming the complaint pleaded this prerequisite, it does not set forth other elements to warrant the equitable remedy. Plaintiff has not alleged any facts from which the Court could conclude that a fiduciary relationship exists between MW and Plaintiff; rather, MW is a creditor and Plaintiff is a debtor, and their relationship is based upon an agreement formed by an arms-length transaction. *See United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 552, 704 A.2d 38, 44 (App. Div. 1997) ("The virtually unanimous rule is that creditor-debtor relationships rarely give rise to a fiduciary duty."). Moreover, the complaint does not establish that the records sought are complicated in nature. Finding no basis for Plaintiff's accounting claim, Count One is **dismissed**.

### 3. Conversion Claim (Count Four)

Count Four alleges that the rental payments received by MW in excess of Plaintiff's repayment obligation under the Loan constitutes a conversion of funds. Compl. Count IV ¶ 2. Defendant argues *inter alia* that the economic loss doctrine bars Plaintiff's conversion cause of action. Def. Mot. at 18-19.

The tort of conversion is the wrongful exercise of dominion and control over the property of another. *Advanced Enterprises Recycling, Inc. v. Bercaw*, 376 N.J. Super. 153, 161, 869 A.2d 468, 472 (App. Div. 2005); *Lee v. Hanley*, 61 Cal. 4th 1225, 1240, 354 P.3d 334, 344 (2015). The economic loss doctrine, a boundary between tort and contract, "prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract." *Duquesne Light Co. v. Westinghouse Elec. Co.*, 66 F.3d 604, 618 (3d Cir. 1995). A tort remedy "does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 316, 788 A.2d 268, 280 (2002) (citation omitted); *see also Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988, 102 P.3d 268, 272 (2004). A plaintiff cannot maintain a tort claim where the complaint reflects only obligations created by an agreement and does not plead an extra-contractual duty. *See Int'l Mins. & Min. Corp. v. Citicorp N. Am., Inc.*, 736 F. Supp. 587, 597 (D.N.J. 1990) (noting that it is well-settled that an independent tort action is "not cognizable where there is no duty owed to the plaintiff other than the duty arising out of the contract itself"); *Erlich v. Menezes*, 21 Cal. 4th 543, 552, 981 P.2d 978, 983 (1999) (stating that a duty giving rise to a tort action is "either completely independent of the contract or arises from conduct which is both intentional and intended to harm").

Here, Plaintiff's conversion claim arises from the parties' Loan and Assignment, *see* Compl. ¶¶ 5-9, and the complaint contains no facts from which the Court can conclude MW owed Plaintiff any duty independent from the agreements. The economic loss doctrine bars Plaintiff's conversion claim and Count Four is therefore **dismissed**.

5

### 4. Unjust Enrichment Claim (Count Five)

Count Five alleges MW has been unjustly enriched by retaining funds from the rental payments in excess of Plaintiff's repayment obligation under the Loan. Compl. Count V ¶ 2. Unjust enrichment is a quasi-contract claim that requires a plaintiff to show that the "defendant received a benefit" and "retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994) (citation omitted). It is unavailable when a valid agreement exists defining the rights of the parties. *See Wall v. Altium Grp., LLC*, 384 F. Supp. 3d 561, 562 (W.D. Pa. 2019) ("Under the governing New Jersey law, there can be no unjust enrichment claim in the existence of a valid contract."); *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) (noting that, under California law, unjust enrichment is not available "when an enforceable, binding agreement exists defining the rights of the parties").

Here, Plaintiff's claim is addressed by the Loan and Assignment, express agreements that permit MW to retain rental payments through October 2042 unless Plaintiff makes a single, lump sum repayment. *See* Loan §§ 1-3. The complaint relies on the Loan and Assignment, *see* Compl. ¶¶ 5-13, and includes no allegation challenging the validity of the agreements or indicating that any provisions have been breached. While Plaintiff argues for the first time in opposition that it now seeks to have certain provisions of the agreements "deemed as unconscionable and not equitable, and therefore stricken from the contract documents," Pl. Opp. Br. at 20-21, the Court will not consider this contention. *See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (citation and internal quotation marks omitted)); *Bergen Plastic Surgery v. Aetna Life Ins. Co.*, No. 22-227, 2022 WL 4115701, at *2 n.2 (D.N.J. Sept. 9, 2022) (declining to accept plaintiff's assertion that defendant's authorizations were an oral contract, where the assertion was first raised in the opposition brief). For these reasons, Plaintiff fails to state a claim for unjust enrichment and Count Five is **dismissed.**

### 5. Equitable Fraud Claim (Count Six)

Count Six alleges MW has committed equitable fraud by retaining excess funds from the rental payments. Compl. Count VI ¶¶ 2-3. In an action for equitable fraud, "the only relief that may be obtained is equitable relief, such as rescission or reformation of an agreement, and not monetary damages." *Enright v. Lubow*, 202 N.J. Super. 58, 493 A.2d 1288, 1296 (N.J. App. Div. 1985) (citing cases). Plaintiff withdrew its reformation claim and seeks only monetary damages in its prayer for relief. *See* Compl. Count VI.[6] Since the complaint fails to request equitable relief, and Plaintiff is not entitled to the monetary damages it seeks in Count Six, this count is **dismissed.**

---

[6] The Court does not consider Plaintiff's catch-all request for "[a]ny other damages that the Court deems as just and proper" to be a demand for reformation or recission of the agreements. Compl. Count VI.

6

### 6. Request for Declaratory Judgment (Count Two)

Plaintiff seeks a declaratory judgment against MW that once the Loan is paid in full (1) Defendant is no longer entitled to any payments under the Cell Tower Lease and (2) any payments under the Cell Tower Lease be made directly to Plaintiff. Compl. Count II ¶ 3. Defendant argues that the claim should be dismissed because the express terms of the Assignment and Loan demonstrate there is "no controversy between the parties and that the declaratory relief sought by Plaintiff would be of no practical effect or usefulness." Def. Mot. at 23. Defendant further contends that Plaintiff improperly seeks a declaration in the abstract regarding "future, hypothetical, and purely speculative injuries," ultimately requesting what is explicitly provided by the agreements at issue. *Id.* at 26. Pointing to the language of the Loan and Assignment, Defendant observes that, once the loan is paid in full, MW will not be entitled to payments under the Cell Tower Lease, but this can only occur (1) when the loan expires on October 1, 2042 in accordance with the amortization schedule or (2) by a lump sum payment in accordance with section 3 of the Loan. *Id.* at 25. In opposition, Plaintiff concedes the Loan and Assignment "speak for themself" but argues again for the first time that the repayment provisions are "unconscionable," "against public policy," and "not enforceable"—contentions that do not appear in the complaint and, as discussed *supra*, will not be considered. Pl. Opp. Br. at 13.

The Declaratory Judgment Act ("DJA") provides that a court "*may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). Relief under the DJA is based on the existence of an "actual controversy," a "live dispute," or "a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1170 (3d Cir. 1987). A declaratory judgment is unwarranted here. The complaint fails to establish an immediate actual dispute between the parties necessitating a declaration from this Court clarifying the legal rights of, or relationship between, Plaintiff and MW. As a result of Plaintiff's inability to establish a live dispute in the context of its declaratory judgment claim, Count Two is **dismissed**.

### B. Plaintiff's Cross Motion for Leave to Amend the Complaint

Plaintiff seeks leave to amend the complaint if any claims are dismissed. Pl. Mot., ECF No. 10. Under Rule 15(a), a party may amend its own pleading once as a matter of right within 21 days of serving such pleading or 21 days of service of a response pleading or motion under Rule 12(b). Fed. R. Civ. P. 15(a). Once the time for such amendment has lapsed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." *Id.* In opposition to Plaintiff's motion, Defendant argues that any amendment to the complaint would be futile given the undisputed terms of the Loan and Assignment. Def. Reply Br. at 2, ECF No. 11. Since leave to amend is "freely give[n] when

justice so requires," Plaintiff shall have an opportunity to amend the complaint to address the deficiencies noted herein and possibly clarify its theory of liability. Fed. R. Civ. P. 15(a)(2); *see United States ex rel. Customs Fraud Investigations, LLC. V. Victaulic Co.*, 839 F. 3d 242, 249 (3d Cir. 2016) (noting that Rule 15 motions should generally be granted and the standard for denial of amendment is high). Plaintiff's request for leave to amend the complaint is **GRANTED**.

### III.   CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is **GRANTED** and all counts asserted against it are **DISMISSED WITHOUT PREJUDICE**. Plaintiff's cross motion for leave to amend the complaint is **GRANTED**. Plaintiff may file an amended complaint within 30 days of the accompanying order that cures the deficiencies articulated herein. An appropriate order follows.

WILLIAM J. MARTINI, U.S.D.J.

Date: October 8, 2024